# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | | |
|---|---|---|
| COVENANT CLEARINGHOUSE, LLC, | § § § § § | |
| Appellant, | | |
| v. | § § § | Case No. 4:22-cv-711-JDK |
| TRINITY FALLS HOLDINGS, L.P., et al., | § § § § § | |
| Appellees. | | |
| COVENANT CLEARINGHOUSE, LLC, | § § § § § | |
| Appellant, | | |
| v. | § § § | Case No. 4:22-cv-712-JDK |
| TRINITY FALLS HOLDINGS, L.P., et al., | § § § § § | |
| Appellees. | | |

## MEMORANDUM OPINION

In 2012, the bankruptcy court approved the sale of a 2000-acre residential development owned by the debtors. The sale order acknowledged that the debtors previously terminated a transfer fee agreement related to the property. A decade later, Appellant Covenant Clearinghouse, LLC sought to set aside the sale order and void the termination of the fee agreement under Federal Rule of Civil Procedure 60(b). Covenant argued that it received no notice of the bankruptcy proceedings, sale, or termination, and that its due process rights were violated.

1

The bankruptcy court denied the motion. The court concluded that Covenant was not a creditor or party in interest and was therefore not entitled to actual notice. The bankruptcy court also found that Covenant received constructive notice sufficient to satisfy due process.

As explained below, the Court **AFFIRMS**.

**I.**

Debtors MA-BBO Five, LP, and MA BB OWEN LP, (the "Debtors") owned Trinity Falls (the "Property"), a 2000-acre tract in Collin County, Texas. In 2008, the Debtors began developing the Property into a residential community. R. at 3597.[1]

As part of their development plan, the Debtors executed a Declaration of Covenant (the "Declaration") providing that a fee equal to 1% of the sales price of any future sale of the Property (or subdivision) be paid to a trustee on behalf of several beneficiaries. R. at 4478 ¶ 5. The Debtors were included among the beneficiaries. R. at 4482 ¶ 17. The Declaration named Covenant's predecessor as Trustee, responsible for collecting the transfer fees. R. at 4479-80 ¶ 9. The Declaration also granted the Debtors the sole and exclusive right to terminate the Declaration, including the transfer fee obligation. R. at 4483 ¶ 25. To terminate, the Debtors were required simply to file a statement in the appropriate public records office describing which portion of the Property was being released from the fee obligation. *Id.* Neither the

---

[1] There are two cases on appeal, No. 4:22-cv-711 and No. 4:22-cv-712, because each Debtor's bankruptcy was administered separately. While Nos. 4:22-cv-711 and 4:22-cv-712 are the same in substance, the pagination of the record in each case differs slightly. Because those differences are irrelevant for purposes of this appeal, all citations herein are to the record in No. 4:22-cv-711.

trustee nor the beneficiaries had a right to pre-termination notice or a right to object to termination. *See id.* (requiring only after-the-fact notice).[2]

In 2011, the Texas legislature prohibited private transfer fees. TEX. PROP. CODE § 5.202(a) ("[A] private transfer fee obligation created on or after the effective date of this subchapter is not binding or enforceable . . . and is void.").[3] Although the prohibition does not apply to pre-existing obligations, the new law imposed certain notice requirements on them, including filing a notice in the appropriate property records and designating a single payee of record. *Id.* § 5.203. In September 2011, Covenant filed the required notice identifying itself as trustee and payee under the Declaration. R. at 4514. And since that time, Covenant has continued to file the required notice every three years. R. at 3602.

Also in 2011, the Debtors filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code. R. at 3597. In their bankruptcy cases, the Debtors sought to sell the Property "free and clear of all liens, claims, encumbrances, and other interests." R. at 3599. The Debtors published a detailed "Notice of Transaction" describing the proposed sale—including that it was free and clear of liens, claims, encumbrances, etc.—in the *Dallas Morning News* on January 24, 2012. R. at 3600.

---

[2] Covenant brought the underlying motion on behalf of itself as trustee and on behalf of the beneficiaries of the transfer fee covenant in the Declaration. *See* R. at 2702. For the sake of simplicity, this opinion uses the name "Covenant" to refer to both Covenant Clearinghouse, LLC, and the beneficiaries, unless otherwise noted.

[3] Likewise, the federal government has prohibited Fannie Mae, Freddie Mac, and the Federal Home Loan Banks from purchasing or investing in mortgages on properties encumbered by private transfer fees. *See* 12 CFR 1228.2. A number of other states have also banned private transfer fees. *See, e.g.,* ARIZ. REV. STAT. ANN. § 33-442 (2017); CAL CIV. CODE § 1098.6 (West 2016); IOWA CODE § 558.48 (2010).

Following an auction in February 2012, the Debtors reached an agreement to sell the Property to CB-H Trinity Falls, L.P. (the "Original Buyer"), predecessor-in-interest to Appellee Trinity Falls Holdings, L.P. ("Trinity Falls"). R. at 3600. The agreement provided as a condition of closing that the Debtors would terminate the Declaration, record the termination in the property records of Collin County, and obtain the bankruptcy court's approval of the termination and finding of termination. R. at 1644, Section 9.2(n).

Per the agreement, the Debtors thereafter executed the termination, which terminated and rendered "null and void and of no further force or effect" the Declaration, including the transfer fee obligation. R. at 4724–25. On February 16, 2012, the bankruptcy court issued the sale order that is the subject of this appeal. In the order, the court approved the sale of the Property, "free and clear . . . of all mortgages, restrictions . . . [and] liens . . . ." R. at 1611. The Debtors then recorded the termination of the Declaration as per the agreement. R. at 4724. Since the sale, the Original Buyer (and Trinity Falls after it) developed the Property and sold lots to others, including Appellees Pulte Homes of Texas, L.P., Drees Custom Homes, L.P., and Perry Homes, LLC (collectively, the "Homebuilders"). Docket No. 29 at 7–8. The Property now has approximately 1,500 homes for individuals and families. *Id.* at 8.

According to Covenant, it first discovered the bankruptcy, the termination of the Declaration, and the sale of the Property in 2021, nearly a decade later. Docket No. 17 at 10. Covenant then filed a Notice of Recission and Invalidity in Collin County, seeking to establish that the termination of the Declaration was null, void,

and invalid. *Id.* at 11–12; R. at 4812. In response, Trinity Falls (later joined by the Homebuilders) filed a Motion to Enforce the 2012 sale order in the bankruptcy court. Docket No. 17 at 11–12. Covenant opposed the motion and filed its own Motion to Set Aside the sale order under Federal Rule of Civil Procedure 60(b) (made applicable to bankruptcy proceedings by Bankruptcy Rule 9024), arguing that it did not receive adequate notice of the bankruptcy, the sale of the Property, or the termination of the Declaration—and that the termination was improperly effectuated according to the Declaration's terms. *Id.* at 12.

Following a hearing, the bankruptcy court denied Covenant's Motion to Set Aside and granted Trinity Falls' Motion to Enforce. R. at 3617. The court held that Covenant's motion failed under Rule 60(b)(1) because Covenant could not show a mistake in the approval of the 2012 sale, R. at 3605–09, and it failed under Rule 60(b)(2) because Covenant did not identify any newly discovered evidence, R. at 3605–3606. The court further found that the sale order was not void for lack of notice under Rule 60(b)(4) because Covenant was not a creditor or other party entitled to actual notice and that constructive notice was sufficient. R. at 3609–12. Regarding the catchall provision in Rule 60(b)(6), the court held that Covenant failed to establish the "extraordinary circumstances" to justify relief under that provision. R. at 3615-16. Finally, the bankruptcy court found that, even if the termination had been ineffective or Covenant had been entitled to actual notice, Covenant's motion was time-barred under Rule 60(c)(1). R. at 3605, 3612–15. The court concluded that, because the Motion to Set Aside failed, the sale order remained a "final order

5

enforceable in accordance with its terms" and therefore granted Trinity Falls' Motion to Enforce.  R. at 3616.

This appeal followed.

## II.

On appeal, Covenant argues only that the bankruptcy court erred in denying the Motion to Set Aside under Rule 60(b)(4).[4]

Rule 60(b)(4) provides that a court "may relieve a party or its legal representative from a final judgment, order, or proceeding" if "the judgment is void." FED. R. CIV. P. 60(b)(4).  A judgment is not void "merely because it [was] erroneous," but may be void if due process was violated.  *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 143 (5th Cir. 1996).  In civil cases, due process generally requires only "proper notice and service of process and a court of competent jurisdiction." *Callon Petroleum Co. v. Frontier Ins.*, 351 F.3d 204, 210 (5th Cir. 2003).  The bankruptcy court held that Covenant received adequate notice—and thus due process—because the Debtors published their intent to sell the Property in the *Dallas Morning News* and recorded a notice of termination of the Declaration in the real property records. R. at 3609–12.

Covenant argues it was entitled to actual notice of the bankruptcy proceedings, including termination of the Declaration, because it was a creditor under the Bankruptcy Code or, alternatively, because it was a "party in interest" to the

---

[4] Although Covenant's opening brief on this point is less than clear, Covenant clarified in its reply brief and at oral argument that it is appealing only the bankruptcy court's denial of its motion under Rule 60(b)(4).  Docket No. 30 at 7.

6

bankruptcy proceeding. Docket No. 17 at 17–26.[5] Reviewing de novo, the Court disagrees and affirms the bankruptcy court. *See Matter of Monge*, 826 F.3d 250, 254 (5th Cir. 2016) (noting that when hearing appeals from a bankruptcy court, the district court sits as an appellate court and applies the same standard of review as the appellate court); *SEC v. Novinger*, 40 F.4th 297, 301 (5th Cir. 2022) (reviewing denial of a Rule 60(b)(4) motion de novo).

## A.

The bankruptcy court held that Covenant was not a "creditor[] (known or unknown) of the Debtors" because it had no "claim for which the Debtors might be liable to [Covenant]." R. at 3610–11. Covenant argues this was error because the Debtors owed Covenant as Trustee "a contingent fee obligation pursuant to the Declaration" and because Covenant and the beneficiaries held "vested rights in and to the Debtors' Property." Docket No. 17 at 18–25.

The Bankruptcy Code defines "creditor" as an "entity that has a claim against the debtor that arose at the time of or before the [debtor's] order for relief." *See* 11 U.S.C. § 101(10)(a). "Claim" means a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." *Id.*

---

[5] Covenant also argues that the bankruptcy court erred in holding that the Rule 60(b) motion was untimely. Docket No. 17 at 30–33. The parties disagree over whether a time limit applies to motions under Rule 60(b)(4). *Compare, e.g., Bludworth Bond Shipyard, Inc. v. M/V Caribbean Wind*, 841 F.2d 646, 649 (5th Cir. 1988) ("[T]here is generally no timeliness requirement applicable to a Rule 60(b)(4) motion."), *with Kemp v. United States*, 142 S.Ct. 1859, 1861 (2022) ("Rule 60(c) imposes deadlines on Rule 60(b) motions. *All* must be filed 'within a reasonable time.'") (emphasis added) (citation omitted). Because the Court finds that the bankruptcy court properly rejected Covenant's Rule 60(b)(4) motion on the merits, the Court need not address the timeliness issue.

7

§ 101(5)(A). As the bankruptcy court correctly held, Covenant had no claim against the Debtors because it had no right to payment from the Debtors under the Declaration. R. at 3609–11. Rather, the Declaration created an obligation on "future property owners to pay a private transfer fee to [Covenant as Trustee] upon a future sale of any portion of the Properties." R. at 3610-11 (citing TEX. PROP. CODE § 5.201(5) (defining "private transfer fee obligation")). The Declaration expressly exempted the Debtors from this obligation. R. at 4478 ¶ 6. Covenant, acting as Trustee, would then disburse the fees among the several beneficiaries, including the Debtors. R. at 4480 ¶ 11(a).

Thus, as the bankruptcy court explained, Covenant "at best[] held speculative and conjectural claims against someone other than the Debtors." R. at 3611. The claims were speculative because they would arise only if (a) a future purchaser bought the Property or a portion of the Property, (b) sold the Property to someone else, and (c) the Debtors had not terminated the Declaration before the transactions took place—which the Debtors could do at any time without notice to Covenant. R. at 4483 ¶ 25. Covenant's claims were against "someone other than the Debtors" because, as noted above, future purchasers were obligated to pay the fee while the Debtors were expressly exempted from paying it. R. at 4478 ¶ 6.

Covenant argues it did have a potential claim against the Debtors because, as Trustee, it could impose a fee of "3% of each future Assessment collected by the Trustee" under the Declaration. Docket No. 17 at 19–20. But any claim for a 3% fee is also speculative because it would be paid only if a future purchaser sold the

8

Property to another future purchaser who paid the transfer fee. R. at 4480 ¶ 11(e). And, in any event, the 3% fee would not have been paid by the Debtors but would have been deducted by Covenant when it received the fee from a future purchaser. *Id.* Such a speculative, future possibility of retaining 3% of a portion of a fee owed to the Debtors is not a "right to payment" from the debtor within the Bankruptcy Code's meaning. *See* 11 U.S.C. § 101(5)(A).

The cases cited by Covenant are distinguishable because they involved claims directly against the debtors. *See In re Andrews*, 239 F.3d 708 (5th Cir. 2001) (the holder of a judgment against the debtor had a "claim" for bankruptcy purposes) *Lemelle v. Universal Mfg. Corp.*, 18 F.3d 1268 (5th Cir. 1994) (same) (a creditor still had a "claim" when the debtor corporation was replaced by a successor corporation); *Johnson v. Home State Bank*, 501 U.S. 78 (1991) (same) (the holder of a mortgage on the debtor's property had a "claim" against the debtor).

Covenant also argues that it was a creditor because it had "vested rights" in, and thus a claim against, the Property of the Debtors. Docket No. 17 at 21–25. To be sure, the Bankruptcy Code defines "claim against the debtor" as including a "claim against the property of the debtor." 11 U.S.C. § 102(2). But Covenant had no claim against the Property here. At most, Covenant had a claim to a potential transaction fee involving a future purchase of the Property *after* the Debtors sold it. Covenant had no right to enforce that claim against the Property by, for example, placing a lien on the Property or forcing a foreclosure. *C.f., e.g., Johnson*, 501 U.S. at 85 (explaining that a "surviving mortgage interest" is a "claim" because it is "an obligation

9

enforceable against the debtor's property"); *In re LaMont*, 740 F.3d 397 (7th Cir. 2014) (holding that a "tax purchaser" had a claim against the debtor's property because the tax purchaser could obtain title to the property if delinquent taxes were not paid). Covenant cites no authority to support its position.

### B.

Alternatively, Covenant argues that it was, "at the very least, [a] part[y] in interest" entitled to actual notice of the bankruptcy proceeding. Docket No. 17 at 25.

The Bankruptcy Code provides that a "party in interest . . . may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b). Although the Code does not define "party in interest," it states that the term includes "the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee." *Id.* The Fifth Circuit has held that "party in interest" generally means "anyone who has a legally protected interest that could be affected in the bankruptcy case." *Matter of Xenon Anesthesia of Tex., P.L.L.C.*, 698 F. App'x 793, 794 (5th Cir. 2017); *see also In re Global Indus. Tech., Inc.*, 645 F.3d 201, 210 (3rd Cir. 2011) ("The list of potential parties in § 1109(b)is not exclusive").

In another context, the Supreme Court held that one must have a "legitimate claim of entitlement" to have a constitutionally-protected property interest, not just an "abstract need or desire . . . [or] unilateral expectation of it." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). So, for example, at-will employment is not a protected interest because the employer can terminate the employment

10

unilaterally at any time. *See, e.g., Short v. Gusman*, 806 F. App'x. 264, 268 (5th Cir. 2020) ("'[A]n employee who is terminable at will generally has no constitutionally-protected property interest.'") (citation omitted); *see also Biliski v. Red Clay Consol. Sch. Dist. Bd. of Educ.*, 574 F.3d 214, 219 (3rd Cir. 2009) ("[A]n at-will employee has 'no property interest' in [his or her] job sufficient to trigger due process concerns.") (citation omitted).

Covenant's interest in the transfer fee was something akin to at-will employment. The Declaration gave the Debtors the sole and exclusive right to terminate the Declaration, including the transfer fee and whatever rights Covenant had to the fee. R. at 4483 ¶ 25. The Debtors were not even required to provide advance notice of a termination; they simply had to provide notice within ten days of termination. *Id.* Further, as noted above, Covenant had no right to enforce the fee obligation against the Debtors or the Debtors' property. Although Covenant might have hoped to collect future private transfer fees, "the Due Process Clause does not protect everything that might be described as a 'benefit'. . . ." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005).

Covenant argues that the Debtors lost their unilateral right to terminate the Declaration when they entered bankruptcy. Docket No. 17 at 26–27. The Bankruptcy Code requires that any actions taken outside the ordinary course of the debtor's business be approved by the court. *See* 11 U.S.C. § 363. Covenant argues that terminating the Declaration was such an action. Docket No. 17 at 27. Even if Covenant interprets this provision of the Code correctly, however, it does not help

Covenant. Covenant must prove a legally protected interest *before* the bankruptcy. *See, e.g.,* 11 U.S.C. § 101(10)(A). And before the Debtors sought bankruptcy protection here, they clearly had a unilateral right to terminate the Declaration, including any rights Covenant might have had.

Further, several courts have limited the scope of "party in interest" to three parties: debtors, creditors, and trustees. *See, e.g., In re Alpex Comput. Corp.*, 71 F.3d 353, 356 (10th Cir. 1995) ("[W]hen we peruse the case law on standing under these circumstances, we find [party in interest] implicitly confined to debtors, creditors, or trustees, each with a particular and direct stake in reopening [the bankruptcy] cognizable under the Bankruptcy Code."); *see also In re Odin Demolition and Asset Recovery, LLC*, 544 B.R. 615, 624–25 (Bankr. S.D. Tex. 2016) ("Courts have generally held that the universe of individuals or entities who may request the reopening of a bankruptcy case is limited to a debtor, a creditor, or, in some cases, a trustee."). Covenant is none of these three.

Accordingly, Covenant is not a party in interest under 11 U.S.C. § 1109(b).

\* \* \*

Having found that Covenant is neither a creditor nor a party in interest, the Court agrees with the bankruptcy court that Covenant was not entitled to actual notice. In addition, as the bankruptcy court correctly noted, Covenant "nonetheless received notice of the Debtors' intent to sell the Properties as well as the Termination of the Transfer Fee Covenant" by publication in the *Dallas Morning News* in January 2012. R. at 3611. This constructive notice is sufficient to satisfy due process in light

of Covenant's non-creditor status. The bankruptcy court thus properly denied Covenant's Motion to Set Aside under Rule 60(b)(4).[6]

### III.

Covenant also asks the Court to reverse the bankruptcy court's grant of Trinity Falls' Motion to Enforce. The bankruptcy court granted the Motion to Enforce as a necessary consequence of denying the Motion to Set Aside. *See* R. at 3616. Because the Motion to Set Aside failed, "the [2012 sale order] is a final order enforceable in accordance with its own terms." *Id.* Likewise, because the Court affirms the denial of Covenant's Motion to Enforce, the 2012 sale order remains a final order and is enforceable.

Covenant argues that the bankruptcy court lacked subject-matter jurisdiction to decide when the Declaration was terminated. Docket No. 17 at 39–42. At the end of its memorandum opinion, the bankruptcy court stated that "[t]he [Declaration] was therefore terminated no later than February 16, 2012 . . . ." R. at 3616. But the court was simply restating a finding it previously made in the 2012 sale order, and as Covenant concedes, the bankruptcy court "plainly had jurisdiction to interpret and enforce its own prior orders." *Travelers Indem. v. Bailey*, 557 U.S. 137, 151 (2009). To the extent Covenant is challenging the bankruptcy court's jurisdiction to make

---

[6] Covenant raises several additional arguments the Court need not reach because they are irrelevant to the issue on appeal. For example, Covenant claims that the bankruptcy court erred in 2012 in approving the termination of the Declaration, Docket No. 17 at 36–48, but this approval was part of the final sale order Covenant has no basis to set aside. Covenant also argues that the bankruptcy court erred in 2022 in finding that Covenant had no right to submit a bid at the auction of the Property. *Id.* at 33–35. But this statement—made in a footnote in the bankruptcy court's order—did not affect the court's determination under Rule 60(b)(4).

13

that finding in 2012, the sale order has been final more than a decade, and Covenant has not shown entitlement to relief from that final order.

### IV.

The judgment of the bankruptcy court is **AFFIRMED**. The Clerk of the Court is instructed to close these cases.

So **ORDERED** and **SIGNED** this **20th** day of **September, 2023.**

                                        *[signature]*
JEREMY D. KERNODLE
UNITED STATES DISTRICT JUDGE